**IT IS ORDERED as set forth below:**

**Date: November 2, 2026**

**James R. Sacca**
**U.S. Bankruptcy Court Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| In re:<br><br>ABEOME CORPORATION,<br><br>Debtor. | Case No. 24-20137-JRS<br><br>CHAPTER 7 |
| LEON S. JONES, in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of ABEOME CORPORATION,<br>Plaintiff,<br>v.<br><br>N. KIRBY ALTON, CHRIS MCLEOD, JAMES E. PITTS, III, LEWIS SCRUGGS, PAUL N. STEINFELD, and MARTIN A. SIMONETTI,<br>Defendants. | Adv. Proc. No. 25-02029-JRS |

**ORDER DENYING MOTION TO DISMISS AMENDED COMPLAINT**

The matter before the Court concerns whether the Amended Complaint asserting claims for, *inter alia*, actual and constructive fraud and breaches of fiduciary duties is a shotgun pleading; whether the Defendant directors have been insulated from liability under the business judgment rule and exculpated from

liability under Georgia corporate law and the Debtor's Restated Articles of Incorporation; and whether a prior judgment in dissenters' rights litigation collaterally estops the Plaintiff from bringing certain claims. These issues are raised in the Defendants' Motion to Dismiss the Amended Complaint (the "Motion") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), as made applicable by Federal Rule of Bankruptcy Procedure 7012(b). [Adv. Proc. Dkt. No. 29, 44]. In the alternative, the Defendants request a more definite statement pursuant to Federal Rule of Civil Procedure 12(e), as made applicable by Federal Rule of Bankruptcy Procedure 12(b).

The Court has also considered the Response to the Motion filed by the Plaintiff, Leon S. Jones, as Chapter 7 Trustee for the Bankruptcy Estate of Abeome Corporation (the "Trustee"), [Adv. Proc. Dkt. No. 45], and the Reply filed by the Defendants. [Adv. Proc. Dkt. No. 46]. For the reasons stated herein, the Court **DENIES** the Motion.

## I. Factual allegations[1]

### A. Abeome Corporation's board of directors and business

Abeome Corporation ("Abeome") is a Georgia corporation formed in 2000. [Am. Compl. ¶¶ 16-17, Adv. Proc. Dkt. No. 26]. Abeome originally operated in the biotechnology business by "developing and patenting a platform for the discovery of monoclonal antibodies."[2] [*Id.* ¶ 17]. Abeome generated revenue by licensing its

---

[1] The following are not findings of fact, but merely a recitation of allegations by the Trustee so the Court can avoid repeatedly using the word "allegedly."

[2] Monoclonal antibodies "are treatments that help your immune system fight diseases or block proteins that cause diseases. They're made up of many copies (clones) of a single antibody that recognize a

platform for the discovery of monoclonal antibodies to third parties. [*Id.* ¶ 17]. Abeome developed two antibody discovery technologies (the "Abeome Technologies"). [*Id.* ¶ 18].

The Defendants were members of the board of directors of Abeome at all times relevant to this adversary proceeding and participated in the management and control of Abeome.[3] [*Id.* ¶ 15]. Defendant N. Kirby Alton ("Defendant Alton") served as the chairman of the board of directors of Abeome. [*Id.* ¶ 235]. Defendant Alton has also served as the CEO of Abeome since January 5, 2022. [*Id.* ¶ 16]. The board of directors of Abeome shifted Abeome's business model "from developing and licensing platforms for the discovery of antibodies . . . to discovering and developing antibodies itself." [*Id.* ¶ 19].

**B. Lanier Biotherapeutics, Inc. and the Lanier Transaction**

Abeome experienced significant cash flow difficulties in the fall of 2020 after the board of directors decided to shift Abeome's business model to developing antibodies. [*Id.* ¶ 20]. Abeome needed additional capital from investors or it would have been unable to continue operating and pay its debts. [*Id.* ¶ 20]. The board of directors considered two alternatives: liquidation or raising additional capital to fund operations. [*Id.* ¶ 21].

In 2020, the Defendants entered into discussions with Daniel White ("Mr. White") and his company Biophtha, Inc. ("Biophtha") about raising capital. [*Id.* ¶ 24].

---

specific target. Scientists make monoclonal antibodies in a lab." *Monoclonal Antibodies*, CLEVELAND CLINIC (Dec. 10, 2025), https://my.clevelandclinic.org/health/treatments/22246-monoclonal-antibodies.

[3] The Amended Complaint uses the terms "Defendants" and "Directors" interchangeably. The Court just uses "Defendants" for the sake of simplicity.

Around November of 2020, Abeome, Mr. White, and Biophtha agreed to non-binding terms in which Abeome would acquire Biophtha in an all-stock transaction. [*Id.* ¶ 25].

The Defendants were concerned about Abeome's potential liability to the National Institute of Health (the "NIH") for improper uses of grant funds. [*Id.* ¶ 30]. In 2017, Defendant Alton was told by the then CEO of Abeome that the NIH guidelines did not allow Abeome to use grant funds to pay debt. [*Id.* ¶ 31]. Prior to July 13, 2021, Abeome shareholder Hamp Stevens repeatedly made the Defendants aware that Abeome was "not in compliance with NIH guidelines and was thus exposed to liability to the NIH on that basis." [*Id.* ¶ 32].

In light of these circumstances, the Defendants discussed forming a new entity called Lanier Biotherapeutics, Inc. ("Lanier") and transferring Abeome's assets and operations to it. [*Id.* ¶ 33]. The Defendants received legal advice that the optimal course of action from a tax perspective was for Abeome to acquire Biophtha and continue operating through Abeome instead of forming Lanier. [*Id.* ¶ 34]. The Defendants ultimately decided to forgo the tax benefits and form Lanier. [*Id.* ¶ 35]. The Defendants were motivated to transfer Abeome's assets to Lanier so as to shield those assets from Abeome's potential liabilities, including potential liability to the NIH. [*Id.* ¶ 36]. Abeome would ultimately be a dormant shell for preexisting equity interests and liabilities after transferring its assets to Lanier. [*Id.* ¶ 33].

Forming Lanier would have entailed, *inter alia*, Abeome receiving an 82.7% interest in Lanier and the remaining 17.3% interest in Lanier being allocated to

Bioptha stockholders (the “Lanier Transaction”). [*Id.* ¶ 38]. The Defendants began soliciting shareholder approval for the Lanier Transaction in June of 2021. [*Id.* ¶ 39]. The Defendants repeatedly represented to Abeome’s shareholders that even though Abeome would contribute the majority of its assets to Lanier, Abeome would retain the Abeome Technologies. [*Id.* ¶ 40].

The Defendants also represented to shareholders that the Abeome Technologies would be sold after the Lanier Transaction, and the proceeds would be retained to satisfy Abeome’s liabilities. [*Id.* ¶ 41]. The Defendants further represented to the shareholders that Abeome had entered into a non-binding term sheet to sell the Abeome Technologies to Alloy Therapeutics (“Alloy”) for $3 million. [*Id.* ¶ 42].

The Defendants did not explain the risks associated with the Lanier Transaction to the shareholders but instead told them Lanier was expected to be very successful and that Abeome would retain the option to divest if Lanier did not raise necessary capital. [*Id.* ¶¶ 44-45]. The Defendants also failed to disclose the amount of funding Lanier would need to be viable and profitable. [*Id.* ¶ 45].

The Defendants also did not adequately inform Abeome’s shareholders of viable alternatives to the Lanier Transaction. [*Id.* ¶ 46]. The Defendants estimated that liquidating Abeome’s assets instead of proceeding with the Lanier Transaction could have provided a potential return of $20 to $45 million plus future milestones and royalties to Abeome’s shareholders, but the Defendants did not disclose this to Abeome’s shareholders. [*Id.* ¶¶ 47-48]. Instead, the Defendants represented to the

Abeome shareholders that the Lanier Transaction was Abeome's only viable option. [*Id.* ¶ 49].

Abeome's shareholders approved the proposed Lanier Transaction at a shareholder's meeting on July 13, 2021. [*Id.* ¶ 52]. The Defendants attended the July 13, 2021, shareholder's meeting and unanimously recommended the Lanier Transaction. [*Id.* ¶ 52]. Several shareholders exercised their dissenters' rights pursuant to Georgia Code Annotated section 14-2-1302 and became creditors of Abeome. [*Id.* ¶¶ 53-55].

**C. Dissenters' Rights Litigation against Abeome**

The Abeome shareholders who exercised their dissenting rights for the Lanier Transaction were sued by Abeome in December of 2021 to determine the value of their shares (the "Dissenters' Rights Litigation"). [*Id.* ¶ 100]. Abeome asserted in the case that the value of their shares was $0.217 per share for a total price of $504,614.00. [*Id.* ¶ 101]. This amount did not include accruing statutory interest. [*Id.* ¶ 101]. The Defendants knew that Abeome would be liable to the dissenting shareholders in an amount not less than $504,614.00, but the Defendants did not include on Abeome's balance sheet any liability to the dissenting shareholders prior to its bankruptcy. [*Id.* ¶ 104]. Ultimately, the dissenting shareholders were awarded a judgment of $1,302,228.48 plus interest on December 11, 2023. [*Id.* ¶ 105]. The judgment was subsequently amended to include prejudgment interest for a total amount of $1,419,768.49. [*Id.* ¶ 106].

**D. Lanier's board of directors**

Lanier's board of directors included Mr. White and the following directors on Abeome's board of directors: Defendant Alton, Defendant Chris McLeod ("Defendant McLeod"), Defendant Lewis Scruggs ("Defendant Scruggs"), Defendant Martin A. Simonetti ("Defendant Simonetti") (collectively the "Overlapping Directors"). [*Id.* ¶ 70]. The Lanier board of directors awarded the Overlapping Directors stock options for 50,000 shares of common stock in Lanier on August 24, 2021. [*Id.* ¶ 71]. All of the Defendants, excluding Defendant Simonetti, were also noteholders and creditors of Lanier. [*Id.* ¶ 73].

In October of 2021, Defendant Alton entered into a consulting agreement with Lanier. [*Id.* ¶ 74]. The consulting agreement provided Defendant Alton with monthly compensation of $7,000 from Lanier and the possibility of a bonus of $130,000.00 upon Lanier securing $12 million in institutional financing. [*Id.*].

The Defendants held personal financial interests in Lanier. [*Id.* ¶ 75]. None of the Defendants abstained from any vote on transactions between Abeome and Lanier on the basis of a conflict of interest. [*Id.* ¶ 77].

**E. Contribution Agreement**

Abeome entered into a Contribution, Subscription, Assignment, and Assumption Agreement (the "Contribution Agreement") with Lanier, Biophtha, and the Biophtha stockholders on July 28, 2021, to effectuate the Lanier Transaction. [*Id.* ¶ 56]. Abeome was insolvent as of the Contribution Agreement. [*Id.* ¶ 128]. The Contribution Agreement resulted in Abeome conveying substantially all of its assets

(excluding the Abeome Technologies), staff, operations, and select liabilities to Lanier in exchange for an 82.7% interest in Lanier. [*Id.* ¶¶ 57-58]. Lanier had no material assets or value independent of the assets contributed by Abeome. [*Id.* ¶ 57]. Abeome's operations ceased except for a wind down. [*Id.* ¶ 58].

The Contribution Agreement also called for funds and contracts to be provided to Lanier. [*Id.* ¶¶ 60-64]. Under the Contribution Agreement, Abeome was to give Lanier the remaining proceeds of Abeome's sale of the Abeome Technologies to Alloy after paying Abeome's liabilities. [*Id.* ¶ 60]. Abeome would also give Lanier certain contracts including $1.3 million in promissory notes owed by Abeome and an agreement between Abeome and Molecular Templates, Inc. ("MTEM") dated March 24, 2020 (the "March 2020 MTEM Agreement"). [*Id.* ¶ 61].

The Contribution Agreement also required Abeome to transfer to Lanier $500,000 from the March 2020 MTEM Agreement. [*Id.* ¶ 63]. This was accomplished on July 29, 2021, by transferring $400,000 to Lanier and retaining $100,000 as a loan from Lanier which was to be paid back with interest. [*Id.* ¶¶ 63-64]. Abeome paid the loan to Lanier back in full with interest on October 8, 2021. [*Id.* ¶ 66].

**F. NIH audit of grant funds provided to Abeome**

The NIH informed Abeome on September 24, 2021, that it was conducting an audit of the grant funds it provided to Abeome. [*Id.* ¶ 80]. These grant funds were provided to Abeome between 2016 and 2018 and totaled $1,482,472.00. [*Id.* ¶ 81]. The Defendants discussed the NIH audit, and they conducted an investigation to see if Abeome complied with NIH grant requirements. [*Id.* ¶¶ 82-83]. Their investigation

confirmed that Abeome had not complied with NIH grant requirements, specifically separate accounting for grant funds. [*Id.* ¶ 83].

The NIH sent requests for documents to Abeome to determine Abeome's compliance with grant requirements, with the latest request being made in September of 2022. [*Id.* ¶¶ 84, 88, 90]. In February of 2022, Abeome admitted to the NIH that it did not undertake a separate accounting for the grant funds, which exposed Abeome to liability for the grant funds. [*Id.* ¶ 88]. Despite the liability to the NIH, the Defendants did not inform the Abeome shareholders of the NIH audit or book any liability to the NIH on Abeome's balance sheet before filing for bankruptcy. [*Id.* ¶¶ 93-94]. The NIH ultimately determined that Abeome failed to properly segregate NIH funds and used NIH funds for unallowable expenses. [*Id.* ¶ 95]. The NIH demanded the return of the $1,482,472.00 grant funds provided to Abeome. [*Id.* ¶ 96].

**G. Alloy Agreement**

Abeome executed an agreement to sell its Abeome Technologies to Alloy on September 30, 2021 (the "Alloy Agreement"). [*Id.* ¶ 97]. The Alloy Agreement called for Abeome to receive $3 million as follows: (1) an initial payment of $1,350,000.00 to be made at closing; (2) a holdback payment of $150,000.00 in one year; and (3) two payments of $750,000.00 (the "Earnout Payments"). [*Id.* ¶ 97]. The first Earnout Payment was due in two years, and the second Earnout Payment was due three years from the closing date. [*Id.*].

### H. February 2021 MTEM Agreement

Abeome entered into a Research and Collaborations Option Agreement with MTEM on February 10, 2021 (the "February 2021 MTEM Agreement"). [*Id.* ¶ 107]. The Contribution Agreement did not provide that Lanier would assume the February 2021 MTEM Agreement. [*Id.* ¶ 108]. However, after MTEM exercised an option under the February 2021 MTEM Agreement and paid Abeome $200,000.00 in March of 2022, Abeome transferred those funds to Lanier. [*Id.* ¶ 109-11].

### I. Abeome's option to unwind the Contribution Agreement

The Defendants discussed in May of 2022 exercising Abeome's right to unwind the Contribution Agreement, which effectuated the Lanier Transaction, as Lanier had failed to secure any institutional investment. [*Id.* ¶¶ 112-13]. The Defendants ultimately voted to not unwind the Lanier Transaction even though Lanier had not made any progress in raising necessary capital. [*Id.* ¶ 116]. The Defendants did this without raising the option to divest with Abeome's shareholders or obtaining any input from them. [*Id.* ¶¶ 115-16]. The Defendants failed to raise this option despite the Defendants having represented to Abeome's shareholders prior to the shareholder vote on the Lanier Transaction that Abeome would have the option to divest from Lanier if Lanier was not successful in raising necessary capital. [*Id.* ¶¶ 114-16].

### J. Amendment to the Contribution Agreement

The Defendants were aware that Lanier was rapidly spending any funds it received and was heading toward a "financing cliff" in August of 2022. [*Id.* ¶ 119]. Lanier did not have any meaningful operating income of its own and was dependent

on outside funding to sustain its operations. [*Id.* ¶ 117]. Additionally, Lanier was having a difficult time securing institutional financing and a presentation by Mr. White to the board of directors of Abeome described Lanier's funding prospects as a "frozen tundra." [*Id.* ¶ 120]. The Overlapping Directors had access to Lanier's finances and were aware of Lanier's financial situation. [*Id.* ¶ 121].

By March of 2022, Abeome had used some of the funds from the Alloy Agreement to pay some but not all of its liabilities. [*Id.* ¶ 126]. Some of Abeome's outstanding liabilities included (1) over $190,000.00 owed on promissory notes; (2) the looming Dissenter's Rights Litigation claim which by Abeome's own estimate would be at least $504,614.00 plus interest; and (3) ongoing litigation costs from the Dissenter's Rights Litigation in the amount of $113,802.00. [*Id.* ¶ 126]. Abeome also had the liability to the NIH in the amount of $1,482,472.00, which was known as a result of the ongoing NIH audit and the known failure to comply with NIH guidelines. [*Id.*].

Abeome was insolvent as its liabilities exceeded its assets. [*Id.* ¶ 128]. However, despite Abeome's insolvency, the Defendants decided to amend the Contribution Agreement to transfer the $1.5 million in Earnout Payments to Lanier and $300,000.00 in cash to Lanier. [*Id.*]. In exchange for the amendment to the Contribution Agreement, Lanier promised to backstop Abeome's obligation to pay Abeome's dissenting shareholders up to $1.5 million but did not backstop Abeome's obligations to other creditors such as the NIH. [*Id.* ¶¶ 136-37].

The present directors of Abeome unanimously approved the amendment to the Contribution Agreement at an Abeome board meeting on August 16, 2022. [*Id.* ¶¶ 129, 132]. Defendants Alton, McLeon, Steinfeld, Simonetti, and Scruggs were present for the August 16, 2022, meeting, but Defendant Pitts was absent from the meeting. [*Id.* ¶¶ 130-31]. Prior to the meeting, Abeome's corporate counsel emailed Defendant Alton and advised that it would be good to assign the Earnout Payments to Lanier as doing so would help with negotiations with Abeome's dissenting shareholders and put a cap around the funds Abeome had to settle the dissenting shareholders' claims. [*Id.* ¶ 133].

Through the process of the amendment of the Contribution Agreement, the Defendants intentionally and unreasonably understated Abeome's operating costs and legal costs for the Dissenters' Rights Litigation. [*Id.* ¶¶ 141-42]. By the Defendants' numbers, Abeome would be left with only $504,614.00 to pay all outstanding liabilities—the exact amount Abeome admitted it owed to its dissenting shareholders, exclusive of any mandatory statutory interest.[4] [*Id.* ¶ 143]. Ultimately, the Defendants failed to retain sufficient funds to cover other liabilities such as to the NIH. [*Id.* ¶ 145]. The Defendants also concealed the transfers under the amendment to the Contribution Agreement from creditors. [*Id.* ¶ 151].

---

[4] The dissenting shareholders contended they were owed considerably more. Specifically, the dissenting shareholders asserted in the Dissenters' Rights Litigation that their shares were worth $1.19 per share for a total amount of $2,906,760.00, which did not include accruing statutory interest. [Am. Compl. ¶ 101].

**K. Abeome's loans to Lanier**

Lanier was running out of funds in the spring of 2023 even after receiving $300,000.00 from Abeome. [*Id.* ¶ 154]. An Abeome board of directors meeting was held on May 8, 2023, where the present directors discussed extending a $350,000.00 line of credit to Lanier to be secured by the first Earnout Payment. [*Id.* ¶ 156]. Defendants Alton, McLeod, Pitts, Simonetti, and Scruggs were present for the May 8, 2023, meeting, and Defendant Steinfeld was absent. [*Id.* ¶ 157]. The present directors unanimously voted to approve the line of credit to Lanier. [*Id.* ¶ 159]. Abeome and Lanier entered into the line of credit agreement on May 10, 2023, and Lanier borrowed the entire $350,000.00 against the line of credit. [*Id.* ¶ 162].

Lanier was again running out of money in July of 2023. [*Id.* ¶ 163]. Abeome's board of directors held a board meeting on August 8, 2023, and discussed amending the line of credit to Lanier to increase the total line of credit to $520,000.00. [*Id.* ¶ 164]. Defendants Alton, McLeod, Simonetti, and Scruggs were present for the board meeting, while Defendants Pitts and Steinfeld were not present. [*Id.* ¶¶ 164, 166]. The present directors voted unanimously to increase the line of credit to Lanier. [*Id.* ¶ 166].

Lanier drew at least $396,000.00 on the line of credit before it received the first Earnout Payment of $750,000.00 in August of 2023. [*Id.* ¶ 167]. Lanier paid back the amounts due to Abeome under the line of credit upon receiving the first Earnout Payment, but as a result the backstop Lanier was to provide to Abeome to pay Abeome's dissenting shareholders was reduced. [*Id.* ¶ 168].

Additionally, the amendment to the Contribution Agreement did not permit Lanier to use the Earnout Payments without prior approval from Abeome as the funds were supposed to back stop Abeome's obligation to its dissenting shareholders. [*Id.* ¶ 169]. However, after repaying the line of credit, Lanier used funds from the first Earnout Payment to fund its operations. [*Id.* ¶ 170]. The Defendants knew that Lanier was using the first Earnout Payment to fund its operations, but the Overlapping Directors did not stop Lanier from spending the first Earnout Payment. [*Id.* ¶¶ 171-72]. Abeome did not receive any additional backstop from Lanier. [*Id.* ¶ 173].

**L. Abeome's bankruptcy and the Trustee's causes of action**

Abeome filed its petition for bankruptcy relief under Subchapter V of Chapter 11 of the Bankruptcy Code on February 2, 2024, which was subsequently converted to Chapter 7 on April 15, 2024. [*Id.* ¶¶ 12-13].

The Trustee asserts the following causes of action:

1. Count I: actual and constructive fraud in a fraudulent transfer (all Defendants)
2. Count II: breach of trust/fiduciary duties to hold assets in trust for creditors under Georgia law (all Defendants)
3. Count III: breach of fiduciary duties owed to corporation (loyalty, care, good faith, fair dealing) (Georgia Code Annotated section 14-2-830) (all Defendants)

4. Count IV: breach of fiduciary duties owed by officers to corporation (loyalty, care, good faith, fair dealing) (Georgia Code Annotated section 14-2-842) (Defendant Alton)
5. Count V: conspiracy to commit fraudulent transfers (all Defendants)
6. Count VI: recovery of fraudulent transfers from subsequent transferee (11 U.S.C. §§ 544, 550, 548; Georgia Code Annotated section 18-2-70 et seq.) (Defendant Alton)
7. Count VII: attorneys' fees and expenses (all Defendants)
8. Count VIII: punitive damages (all Defendants)

## II. Discussion

### A. Legal standard for Rule 12(b)(6) motion to dismiss

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] *Id.* (citation omitted). However, when "a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In contrast to factual allegations which are accepted as true and viewed in the light most favorable to the non-moving party, *Watts v. Fla. Int'l. Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (citation omitted), the Court does not accept as true legal conclusions. *Iqbal*, 556 U.S. at 678. Thus, a bare recital "of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice." *Id.* (citation omitted).

Additionally, a heightened pleading standard applies to fraud. *Eden v. Eden (In re Eden)*, 584 B.R. 795, 803 (Bankr. N.D. Ga. 2018) (citations omitted). Federal Rule of Civil Procedure 9(b), as made applicable by Federal Rule of Bankruptcy Procedure 9, states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

---

[5] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted).

Rule 9(b) is satisfied in the Eleventh Circuit if a complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*In re Eden*, 584 B.R. at 803-04 (quoting *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)).

Although Rule 9(b) allows for intent and conditions of a person's mind to be alleged generally, the plaintiff still must adhere to the pleading requirements of Rule 8 and plead plausible factual assertions showing intent. *Iqbal,* 556 U.S. at 686-87.

**B. The Amended Complaint is not a shotgun pleading.**

The Defendants argue that the Trustee's Amended Complaint is an impermissible shotgun pleading. [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 9-10, Adv. Proc. Dkt. No. 44]. The Eleventh Circuit has noted that shotgun pleadings "violate either Rule 8(a)(2) or Rule 10(b), or both." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See also* FED. R. BANKR. P. 7008 (stating that Federal Rule of Civil Procedure 8 applies in adversary proceedings). Federal Rule of Civil Procedure 10(b) states in pertinent part that

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity,

> each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

*See also* FED. R. BANKR. P. 7010 (stating that Federal Rule of Civil Procedure 10 applies in adversary proceedings).

The Eleventh Circuit has delineated shotgun pleadings into four categories:

> The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland*, 792 F.3d at 1321-23 (footnotes omitted).

Ultimately, "[a] dismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is <u>virtually impossible</u> to know which allegations of fact are intended to support which claim(s) for relief.'" *Id.* at 1325 (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996))

The Defendants argue that the Trustee's Amended Complaint is a shotgun pleading because it fits into the first two categories and the last category. [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 9-10]. The Trustee argues in response that his Amended Complaint is not a shotgun pleading as it does not fit into the three aforementioned categories. [Pl.'s Resp. to Mot. to Dismiss 3-6, Adv. Proc. Dkt. No. 45]. The Defendants seem to abandon the first two categories of shotgun pleadings in their Reply and instead argue that the last category is still applicable. [Defs.' Reply 10-11, Adv. Proc. Dkt. No. 46]. Nevertheless, the Court addresses the first two categories and the last category. Ultimately, as explained below, Court finds that the Defendants' argument misses the mark and must be denied.

The Trustee's Amended Complaint does not fall into the first category of shotgun pleadings. The Trustee's Amended Complaint does not incorporate all preceding allegations for each count. Instead, each count in the Trustee's Amended Complaint begins by incorporating a range of allegations from paragraphs 1 through 173, which deal with identifying the parties, jurisdiction, venue, and factual averments. The remaining allegations for each count are specific to that particular count. Thus, the Trustee's Amended Complaint does not fit the first category of shotgun pleadings.

Concerning the second category of shotgun pleadings, the length of a pleading alone does not make a pleading fall into the second category. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1293 n.2 (11th Cir. 2018) (noting that the court's detailing of the length of a complaint "should not be construed as an indictment against all

long complaints"). An example of a pleading fitting the second category of shotgun pleadings is in *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021). In *Barmapov*, the court held that the plaintiff's second amended complaint fell into the second category of shotgun pleadings because it was "rife with immaterial factual allegations, including five pages and 24 paragraphs of irrelevant details about the alleged criminal backgrounds of some of the defendants." *Id.*

The Trustee's Amended Complaint does not fall into the second category of shotgun pleadings. The Defendants argue that the Trustee's Amended Complaint falls into the second category because it "is replete with immaterial factual matter not tied to specific claims such as historical accounting, tax-asset strategy, and generalized liquidation what-ifs." [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 10]. These factual allegations are not immaterial as they provide context for the claims asserted by the Trustee including options and information the Defendants had available to them. Thus, the Trustee's Amended Complaint does not fit the second category of shotgun pleadings.

Lastly, the Trustee's Amended Complaint does not fall into the fourth category of shotgun pleadings. The Defendants argue that the Trustee asserts almost all claims against all Defendants even though Defendant Pitts was absent from the August 16, 2022, vote and Defendant Steinfeld was absent from the May 8, 2023, vote. [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 10]. The problem with the Defendants' argument is that the Trustee specifically identified in his Amended Complaint which specific Defendant was absent from a particular meeting. Thus,

even though a count may be asserted against all Defendants, the Trustee's allegations make clear which of the Defendants were present at which board meetings. Therefore, the Trustee's Amended Complaint does not assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323 (footnote omitted).

**C. The Defendants have not carried their burden for a more definite statement under Rule 12(e).**

The Defendants request that the Trustee be required to provide a more definite statement of his Amended Complaint under Federal Rule of Civil Procedure 12(e). [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 10, 24; Defs.' Reply 10-12]. The basis for the Defendants' request is their argument that the Trustee's Amended Complaint is a shotgun pleading.

Federal Rule of Civil Procedure 12(e) states in pertinent part that a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." It is the movant's burden to demonstrate that a pleading "is so vague or ambiguous that they cannot respond, even with a simple denial, in good faith or without prejudice to them." *Hart v. Hodges*, No. 1:05-CV-30, 2005 U.S. Dist. LEXIS 50946, 2005 WL 1630548, at *1 (M.D. Ga. July 8, 2005) (citation omitted). "A motion for a more definite statement will be denied where [the] [p]laintiff's complaint gives the [d]efendants fair notice of the nature and basis of the claim as well as a general indication of the type of litigation involved and [the] [p]laintiff's complaint contains

'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (citation modified) (quoting FED. R. CIV. P. 8(a)).

The Defendants have not carried their burden under Rule 12(e) for the reasons stated above concerning why the Trustee's Amended Complaint is not a shotgun pleading. Therefore, the Defendants' request for a more definite statement under Rule 12(e) is denied.

**D. The Defendants' arguments for dismissal of Count I are not sufficient.**

The Defendants argue, *inter alia*, that the Trustee failed to plead actual or constructive fraud with particularity as required by Rule 9(b). [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 16]. The Court first addresses whether Rule 9(b) applies to a constructive fraud claim under Georgia law. The Court then addresses the Defendants' remaining arguments for dismissal of the actual fraudulent transfers and constructively fraudulent transfers claim.

**1. Rule 9(b) does not apply to a claim for constructively fraudulent transfers under Georgia law.**

"Rule 9(b) applies to claims for actual fraud under Georgia's version of the Uniform Fraudulent Transfer Act (UFTA) but not to claims for constructive fraud." *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1331 (N.D. Ga. 2014) (citation omitted); *see also Endurance Am. Ins. Co. v. Bain Berkeley, Inc.*, Civil Action No. 1:22-CV-1309, 2024 U.S. Dist. LEXIS 246251, 2024 WL 6077886, at *13 (N.D. Ga. Mar. 21, 2024) (discussing Georgia's Uniform Voidable Transactions Act ("UVTA") and noting that courts in the Northern District of Georgia have held that Rule 9(b)

does not apply to claims for constructive fraud (citations omitted)). This Court has adhered to this view. *Aliera LT, LLC v. Wells Fargo Bank, N.A. (In re Aliera Companies, Inc.)*, Ch. 11 Case No. 21-11548, Adv. No. 23-05215, 2025 Bankr. LEXIS 2227, 2025 WL 2599852, at *2 n.3 (Bankr. N.D. Ga. Sept. 8, 2025) (citations omitted) (noting that Rule 9(b)'s heightened pleading standard did not apply to constructive fraudulent transfers under Georgia law). Therefore, to state a claim for constructive fraud under Georgia's UVTA, the Trustee "need only allege 'a short and plain statement of the claim' that is plausible on its face." *Renasant Bank, Inc. v. Smithgall*, Civil Action No. 1:15-CV-0459, 2016 U.S. Dist. LEXIS 138709, at *7 (N.D. Ga. June 10, 2016) (citing FED. R. CIV. P. 8(a)(2)).

**2. Actual fraud**

Georgia's UVTA provides a cause of action for actual fraud:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

GA. CODE ANN. § 18-2-74(a)(1). Thus, to state a claim under Georgia Code Annotated section 18-2-74(a)(1) the Trustee must "allege that there was (1) a transfer (2) made by the debtor (3) either before or after a creditor's claim against the debtor arose, and (4) the debtor's actual intent for making the transfer was to hinder, delay, or defraud a creditor." *Wells Fargo Bank*, 2025 WL 2599852, at *28.

Georgia Code Annotated section 18-2-74(b) lists eleven factors—sometimes referred to as "badges of fraud"—that a court may consider in determining whether actual intent to hinder, delay, or defraud exists. *Ralls Corp.*, 27 F. Supp. 3d at 1331 (citations omitted). These eleven factors, which are not exclusive, are as follows:

> (1) The transfer or obligation was to an insider;
> (2) The debtor retained possession or control of the property transferred after the transfer;
> (3) The transfer or obligation was disclosed or concealed;
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) The transfer was of substantially all the debtor's assets;
> (6) The debtor absconded;
> (7) The debtor removed or concealed assets;
> (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

GA. CODE ANN. § 18-2-74(b). Since these factors are not exclusive nor the sole indicators of intent to defraud, "[f]raudulent intent may be inferred from the totality of the circumstances." *Tindall v. H & S Homes, LLC*, 757 F. Supp. 2d 1339, 1351 (M.D. Ga. 2011).

"While '[t]he presence of a single badge of fraud may spur mere suspicion, the confluence of several can constitute conclusive evidence of an actual intent to defraud . . . .'" *Howell v. Fulford (In re S. Home & Ranch Supply, Inc.)*, 561 B.R. 810, 818 (Bankr. N.D. Ga. 2016) (quoting *Off. Comm. of Unsecured Creditors of Toy King Distribs., Inc. v. Liberty Sav. Bank, FSB (In re Toy King Distribs., Inc.)*, 256 B.R. 1,

128-29 (Bankr. M.D. Fla. 2000)). The badges of fraud the Trustee alleges are present are as follows:

> (a) transfers to an insider; (b) transfers made while Debtor was insolvent or rendered insolvent as a result; (c) transfers totaling substantially all of Debtor's assets; (d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (e) transfers made without reasonably equivalent value; (e) transfers occurred at times when Debtor faced known and mounting obligations; and (f) transfers were concealed from creditors.

[Am. Compl. ¶ 187].

Turning to the Defendants' arguments, the Defendants argue that the Trustee's actual fraud claim fails to comply with Rule 9(b) because the Trustee collectively asserts the Defendants caused fraudulent transfers, but Defendant Pitts and Defendant Steinfeld were absent from certain votes. [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 16]. The Defendants rely upon *Ambrosia Coal & Construction Co. v. Pages Morales* for the proposition that in "a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." 482 F.3d 1309, 1317 (11th Cir. 2007) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997)). The problem with the Defendants' argument is that the allegations against the Defendants are in their capacity as directors of Abeome and concerns their votes to approve transactions the Trustee alleges are fraudulent. The Trustee specifically identifies the dates of the votes, which Defendants voted for a given transaction, and which Defendants were absent for particular Abeome board of director votes. Thus,

the Trustee's allegations inform each Defendant of his or her participation in the alleged fraud.

The Defendants also argue that the Trustee's badges of fraud "collapse against the Complaint's own timeline" with respect to 2021 transactions. [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 16-17; Defs.' Reply 7-8]. The Defendants specifically focus on how Abeome's dissenting shareholders' claim only arose after the July 13, 2021, shareholder vote to approve the Lanier Transaction and that the NIH audit notice did not arrive until September 24, 2021. [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 16-17; Defs.' Reply 7-8]. As for the potential liability to the NIH and the dissenting shareholders' claim, the Defendants further maintain that these were merely contingent liabilities. [Defs.' Reply 7-8]. Thus, the Defendants maintain that the potential liability to the NIH and the dissenting shareholders cannot provide actual fraudulent intent for the Lanier Transaction and the Contribution Agreement which was entered into on July 28, 2021.

The Defendants misunderstand what constitutes a "claim" under Georgia's UVTA: "Claim,' except for claim for relief, means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." GA. CODE ANN. § 18-2-71(3). Additionally, a "Creditor" is "a person[6] who has a claim."

[6] "Person' means an individual, public corporation, government or governmental subdivision agency or instrumentality, business or nonprofit entity, estate, or other legal entity." GA. CODE ANN. § 18-2-71(11).

GA. CODE ANN. § 18-2-71(4). Thus, a "claim" does not have to be a fixed liability in order to serve as the basis for a voidable transfer under Georgia's UVTA.

In light of the foregoing definitions—and because the badges of fraud are not the exclusive nor sole indicators of intent to defraud—the Defendants' argument that the Trustee's badges of fraud collapse with respect to 2021 transactions fails. Starting with the Lanier Transaction, which was approved on July 13, 2021, the Trustee has alleged that the Defendants knew before the Lanier Transaction that Abeome may be liable to the NIH for improper use of grant funds. [Am. Compl. ¶¶ 30-33]. The Trustee has also alleged that the Defendants were motivated to transfer Abeome's assets through the Lanier Transaction to shield those assets from the NIH. [*Id.* ¶ 36]. Before the Contribution Agreement, the Defendants were aware of potential liability to the NIH and the dissenting shareholders had dissented. [*See id.* ¶¶ 52-53]. Thus, the Defendants' knowledge of potential liability to the NIH and the dissenting shareholders provides a basis for fraudulent intent.

The last argument the Defendants make is the Trustee pled badges of fraud in a conclusory manner. [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 17-18]. The Trustee has not pled badges of fraud in a conclusory manner. For example, the Trustee alleges that Lanier is an insider of Abeome since Abeome obtained an 82.7% interest in Lanier through the Contribution Agreement.[7] [*See* Am. Compl. ¶ 57]. Another example is that the Trustee alleges Abeome transferred substantially all of

[7] An "Insider" includes an affiliate. GA. CODE ANN. § 18-2-71(8)(D). An "Affiliate" includes "[a] corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote by the debtor." GA. CODE ANN. § 18-2-71(1)(B)

its assets through the Contribution Agreement because Abeome transferred its staff, operations, and all of its physical and intellectual property assets excluding the Abeome Technologies. [Am. Compl. ¶¶ 57-58]. The Trustee's allegation that Abeome transferred substantially all of its assets is bolstered by the Trustee's allegation that the Defendants knew prior to the Lanier Transaction and the Contribution Agreement that Abeome's assets were worth $20 to $45 million if they were liquidated instead of proceeding with the Lanier Transaction. [Am. Compl. ¶ 47]. In contrast, proceeding with the Lanier Transaction and Contribution Agreement would have left Abeome with an 82.7% interest in Lanier and the ability to sell the Abeome Technologies for $3,000,000.00. [Am. Compl. ¶¶ 38, 40-43].

The Court is also not persuaded by the Defendants' rule statements from cases concerning badges of fraud. The Defendants' reliance on the proposition from *Tindall* that a single badge of fraud may not suffice to show the requisite fraudulent intent is misplaced as the remainder of the sentence undercuts their argument: "[A] single badge of fraud may only create a suspicious circumstance and may not constitute the requisite fraud to set aside a conveyance; but several of them considered together may form a basis to infer fraud." 757 F. Supp. 2d at 1351. As previously noted, there is more than a single badge of fraud pled, and the determination of fraudulent intent is not limited to the badges of fraud. The Defendants also cite to *Bishop v. Patton* for the proposition that one or more badges of fraud does not create a rebuttable presumption of fraud under the Uniform Fraudulent Transfer Act. 706 S.E.2d 634, 641 (Ga. 2011), *overruled on other grounds*, *SRB Inv. Servs., LLLP v. Branch Banking*

*& Tr. Co.*, 709 S.E.2d 267 (Ga. 2011). While true, the very next sentence in *Patton* explains how the badges of fraud are treated: "[T]he factors are treated as 'relevant evidence as to the debtor's actual intent,' from which the finder of fact may draw an inference of actual intent to defraud." *Id.* (citations omitted). The Trustee has pled sufficient facts to show the Defendants made the transfers with fraudulent intent.

**3. Constructive fraud**

The Trustee's constructive fraudulent transfer claim is based on Georgia Code Annotated section 18-2-74(a)(2)(A), [Am. Compl. ¶ 189], which states as follows:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> . . .
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

As an initial matter, the Defendants reliance upon this Court's decision in *Wells Fargo Bank* for the elements to a constructive fraudulent transfer claim is misplaced as this Court in *Wells Fargo Bank* stated the elements for a claim under Georgia Code Annotated section 18-2-75(a). 2025 WL 2599852, at *27. There is an important distinction between Georgia Code Annotated sections 18-2-74(a)(2) and 18-2-75(a): section 18-2-74(a)(2) allows for the creditor's claim to arise "before or after the transfer was made or the obligation was incurred" whereas section 18-2-75(a) requires the creditor's claim to arise "before the transfer was made or the obligation

was incurred." *See also Wells Fargo Bank*, 2025 WL 2599852, at *27 ("Prosecution of a claim under O.C.G.A. § 18-2-74(a) is allowed regardless of 'whether [a] creditor's claim arose before or after the transfer was made,' while prosecution of a O.C.G.A. § 18-2-75(a) claim requires that a creditor's 'claim arose before the transfer was made.'"). Thus, the Court does not address the Defendants' arguments with respect to elements that are not applicable to Georgia Code Annotated section 18-2-74(a)(2) such as the requirement that the creditor's claim arise before the transfer and the debtor be insolvent at the time of the transfer or as a result of the transfer.

In order to state a claim for constructive fraud under Georgia Code Annotated section 18-2-74(a)(2), the plaintiff must plead facts alleging that "(1) the debtor did not receive reasonably equivalent value in exchange for the transfer; and (2) at least one other condition [in section 18-2-74(a)(2)] is met." *Fulford*, 561 B.R. at 814. The Trustee has pled that the other condition is Georgia Code Annotated section 18-2-74(a)(2)(A). The Court does not address this condition, however, because the Defendants do not argue that this condition is not met. [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 18-19].

The Defendants argue that the Trustee has failed to plead a lack of reasonably equivalent value because the Trustee "affirmatively ple[d] that Abeome received an 82.7% equity interest in Lanier and retained the Abeome Technologies, which were subsequently sold for $3,000,000." [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 18-19]. Whether a debtor received reasonably equivalent value in exchange for the transfer is a three-part test: "1) whether the debtor received value; 2) whether

the value received was in exchange for the property transferred; and 3) whether the value was reasonably equivalent to the value of the property transferred." *Fulford*, 561 B.R. at 815 (quoting *Mann v. Brown (In re Knight)*, 473 B.R. 847, 850 (Bankr. N.D. Ga. 2012)).

Concerning the first two elements, Georgia Code Annotated section 18-2-73(a) describes when value is given for a transfer or obligation:

> Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

Additionally, "[a] transfer is in exchange for value if one is the quid pro quo of the other." *Fulford*, 561 B.R. at 815 (quoting *Mann*, 473 B.R. at 850).

The first two elements are satisfied. Abeome received value for some of the transfers because it received an 82.7% interest in Lanier. Additionally, Abeome received its interest in Lanier in exchange for the transfer of its assets.

Concerning the third element, which is a question of fact, the Court considers the totality of the circumstances in determining "[w]hether a debtor received reasonably equivalent value in exchange for a transfer." *Fulford*, 561 B.R. at 815 (citations omitted). Value does not have to involve a dollar-for-dollar exchange to be reasonably equivalent. *Id.* (citations omitted). Additionally, "[v]alues are determined as of the time of the transfer." *Id.* at 816 (citation omitted). Ultimately, "[t]he Court need only ensure that the debtor received a fair exchange, after examining all aspects

of the transaction and carefully measuring the value of all benefits and burdens to the debtor . . . ." *Id.* at 815-16 (citation modified).

Regarding the third element, whether Abeome received reasonably equivalent value for the assets transferred, the Trustee argues that Abeome did not receive reasonably equivalent value because (1) it only received an 82.7% interest in Lanier for the assets it transferred and (2) the transfer of cash to Lanier for a backstop of Abeome's liability in the Dissenters' Rights Litigation was illusory and did not meet the requirement of Georgia Code Annotated section 18-2-73. [Pl.'s Resp. to Mot. to Dismiss 14-16]. The Trustee maintains that an 82.7% interest in Lanier, a new company, is different than outright ownership of the assets that he alleges had a liquidation value of more than $20 million. [*Id.* at 15; Am. Compl. ¶ 47]. The Court agrees with the Trustee that at this stage, viewing the facts in the light most favorable to the Trustee, that he has plausibly pled that Abeome did not receive reasonably equivalent value for its transfers to Lanier.

**E. The Trustee has standing to assert a claim for breach of fiduciary duties owed to creditors.**

The Defendants argue that the Trustee lacks standing[8] for Count II of his Amended Complaint, which is a claim for breach of fiduciary duties owed to creditors. [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 19]. The Defendants also argue that if the Trustee's claim for breach of fiduciary duties is recharacterized as an

---

[8] The Defendants do not raise the equitable defense of *in pari delicto*. Thus, the Court does not address this equitable defense. "[A]n 'analysis of a party's standing does not include analysis of equitable defenses, such as *in pari delicto*.'" *Aliera LT, LLC v. Health Reform Team, Inc. (In re Aliera Companies, Inc.)*, 665 B.R. 468, 492 (Bankr. N.D. Ga. 2024) (citation modified) (quoting *Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1149 (11th Cir. 2006)).

estate-level duty it is duplicative of Count III. [*Id.* at 19; Defs.' Reply 9-10]. The Trustee argues in response that he does have standing to bring Count II and that Count II is not duplicative of Count III "because the Count II claim arises from a separate and distinct duty under Georgia law." [Pl.'s Resp. to Mot. to Dismiss 17-18].

"[A] bankruptcy trustee does not have standing to bring a claim based on harm to the estate's creditors instead of the debtor." *Aliera LT, LLC v. Health Reform Team, Inc. (In re Aliera Companies, Inc.)*, 665 B.R. 468, 494 (Bankr. N.D. Ga. 2024) (citations omitted). However, when there is an injury to the debtor and all creditors, "a bankruptcy trustee may sue a defendant on the basis of the general claims all creditors may have against a third party, as long as the claim is allowed by state law, as opposed to claims that are particular to a specific creditor." *Id.* at 495 (citation omitted).

"The distinguishing element between general and personal claims is whether the type of injury is 'general and common' to debtors and creditors alike or whether the injury is 'peculiar and personal' to the creditor itself." *Id.* at 494-95 (quoting *Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, Case No. 1:13-CV-195, 2016 U.S. Dist. LEXIS 18788, 2016 WL 632482, at *4 (M.D. Ga. Feb. 17, 2016)). An example of a general claim is where a defendant "looted the corporate assets . . . because by misappropriating corporate assets, a defendant causes direct harm to the corporation and only indirect harm to the creditors." *Id.* (citation modified). A trustee pleading a general claim, "whereby the creditors as a whole were harmed, . . . must still plead an injury unique to the debtor estate as a result of the alleged misconduct."

*Id.* at 496 (citation omitted). "For example, such injury could be the misappropriation of funds from the debtor." *Id.* (citation omitted).

Both Count II and Count III focus on the Defendants' alleged breach of fiduciary duties. Under Georgia law, "[t]o recover for breach of a fiduciary duty, a plaintiff must demonstrate the existence of such duty, the breach of that duty, and damages proximately caused by the breach." *U.S. Cap. Funding VI, Ltd v. Patterson Bankshares, Inc.*, 137 F. Supp. 3d 1340, 1374 (S.D. Ga. 2015) (citation omitted). To establish breach of duty to creditors of a corporation, a plaintiff "must show the same elements but also must allege insolvency of the corporation." *Phx. Corp. Recovery Servs., LLC v. Astrachan (In re Beaulieu Grp., LLC)*, Ch. 11 Case No. 17-41677, Adv. No. 18-4027, 2021 Bankr. LEXIS 2662, 2021 WL 4469928, at *13 (Bankr. N.D. Ga. Sept. 29, 2021) (citation omitted). "Waste of corporate assets is a type of breach of fiduciary duty." *Id.* at *13 (citations omitted).

A discussion of Georgia law regarding a director's fiduciary duties when a corporation is solvent versus when the corporation is insolvent is necessary to frame the Defendants' argument. "In a solvent, going concern, directors are the agents or fiduciaries of the corporation, not of its creditors." *Ga. Com. Stores, Inc. v. Forsman*, 803 S.E.2d 805, 809 (Ga. Ct. App. 2017) (quoting *McEwen v. Kelly*, 79 S.E. 777, 779 (Ga. 1913)). Georgia Code Annotated section 14-2-830(a) provides that "[a] director shall perform his or her duties as a director in good faith and with the degree of care an ordinarily prudent person in a like position would exercise under similar circumstances." A bankruptcy trustee of a debtor corporation is the proper party to

bring an action for breach of duties owed to a corporation by directors and officers as the bankruptcy trustee succeeds to any right the corporation "may have had to sue directors or officers for loss from a breach of duty." *Hays v. Curry (In re Maxxis Grp.)*, Ch. 7 Case No. 03-77243, Adv. No. 06-06554, 2009 Bankr. LEXIS 4249, at *21-22 (Bankr. N.D. Ga. Sept. 29, 2009) (citations omitted).

When a Georgia corporation is insolvent, "the managing officers and directors of a corporation are charged with the duty of conserving and managing the remaining assets of an insolvent corporation in trust for the creditors." *Patterson Bankshares, Inc.*, 137 F. Supp. 3d at 1375 (citation modified); *see also Hays*, 2009 Bankr. LEXIS 4249, at *29 (noting that the duties directors owe to the corporation expand to include creditors when the corporation becomes insolvent (citation omitted)). As a result, "when a corporation becomes insolvent its directors are bound to manage the remaining assets for the benefits of its creditors . . . and cannot in any manner use their powers for the purpose of obtaining a preference or advantage to themselves." *Patterson Bankshares, Inc.*, 137 F. Supp. 3d at 1375 (citation modified). Therefore, corporate directors and officers

> may not give preference to existing debts which the corporation owed to other persons, and for which such officers and directors were primarily liable, unless a preference or payment is made in the performance of an agreement . . . entered into at or prior to the time when the liabilities to the creditors were incurred, or before the insolvency of the corporation.

*Id.* (citation modified).

Ultimately,

> any scheme or device, the purpose of which is to indemnify the owners, officers, or directors of a corporation against loss, whether as creditors or as endorsers of notes given by the corporation or otherwise, constitutes legal fraud. An abuse of this duty gives rise to a cause of action in favor of the creditors against the corporate officers and directors to recover sums improperly paid out by the corporation.

*Resser v. Glover*, 913 S.E.2d 131, 135 (Ga. Ct. App. 2025) (citation modified).

The Defendants argue that Count II does not plead self-preference nor a distinct injury from Count III. [Defs.' Reply 9-10]. The Trustee does plead that the Defendants benefited themselves as the Trustee has alleged that the Defendants transferred some of Abeome's assets to Lanier, despite Abeome's insolvent financial condition, at a time when the Defendants held direct personal financial interests in Lanier and some of the Defendants were Overlapping Directors. Thus, the transfers to Lanier financially benefited the Defendants over the creditors of Abeome and Abeome itself.

The Court is also not persuaded by the Defendants' argument that Count II is duplicative of Count III at this stage of the litigation. In *Astrachan*, the court rejected a similar argument in a motion to dismiss context. 2021 WL 4469928, at *24. In *Astrachan,* the plaintiff asserted claims for breach of fiduciary duties to the company (an LLC) and to creditors. *Id.* at *13. In denying the motion to dismiss with respect to the breach of fiduciary duty claims, the court noted that "the claims are duplicative in the sense that the injury under both is the same." *Id.* at *24. The court addressed the duplicative issue as follows:

> Whether the plaintiff is entitled to a recovery based on breach of duty to the debtor or breach of duty to creditors

> appears to be a timing issue according to when the debtor became insolvent. For purposes of a motion to dismiss, both claims have been sufficiently alleged . . . . But there can only be one recovery. Once evidence of the specific timing of insolvency is proffered, it is possible one or the other claims may no longer be viable, or it may be that partial damages are owed under each claim.

*Id.* at *24.

This Court agrees with the resolution in *Astrachan* regarding the duplicative issue and accordingly denies the Defendants' Motion with respect to Count II.

**F. Collateral estoppel and Georgia's appraisal exclusivity doctrine are not applicable.**

The Defendants argue that "Counts I, II, III, and V should be dismissed to the extent they challenge the July 2021 Lanier Transaction and Contribution Agreement" as those claims are "barred both by Georgia's appraisal-exclusivity doctrine and principles of issue preclusion." [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 10]. The Defendants rely upon an order entered by Judge Clay D. Land of the District Court for the Middle District of Georgia in the Dissenters' Rights Litigation. [*Id.* at 11; Defs.' Mem. Of Law in Supp. Of Mot. to Dismiss, Ex. A,[9] Adv. Proc. Dkt. No. 29]. In that case, Abeome was the plaintiff and Abeome shareholders J. Hampton Stevens, Lisa L. Torbett, and George Campbell were defendants. [Defs.' Mem. Of Law in Supp. Of Mot. to Dismiss, Ex. A]. The basis of the litigation was the Georgia Dissenters' Rights statutory scheme, Georgia Code Annotated section 14-2-1301 et seq. [*Id.*, Ex. A at 2].

[9] Exhibit A is Judge Land's findings of fact and conclusions of law in the Dissenters' Rights Litigation.

**1. Collateral estoppel is not applicable because the Dissenters' Rights Litigation did not address an identical issue.**

The Defendants argue specifically that Georgia Code Annotated section 9-12-40 applies to the Dissenters' Rights Litigation. [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 11]. The Dissenters' Rights Litigation was based on Georgia state substantive law, and the federal court's jurisdiction was based on diversity jurisdiction. [Defs.' Mem. Of Law in Supp. Of Mot. to Dismiss, Ex. A at 3, 8]. "[F]ederal common law borrows the state rule of collateral estoppel to determine the preclusive effect of a federal judgment where the court exercised diversity jurisdiction." *CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017). Thus, this Court will apply Georgia's collateral estoppel law.

Collateral estoppel under Georgia law is derived from Georgia Code Annotated section 9-12-40. *Moore v. Gill (In re Gill)*, 181 B.R. 666, 671 (Bankr. N.D. Ga. 1995). This statute states

> [a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

GA. CODE ANN. § 9-12-40.

"A party seeking to assert collateral estoppel under Georgia law must demonstrate that (1) an identical issue, (2) between identical parties, (3) was actually litigated and (4) necessarily decided, (5) on the merits, (6) in a final judgment, (7) by a court of competent jurisdiction." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1264

(11th Cir. 2011) (citations omitted). The first element is dispositive, so it is the only element the Court addresses.

Concerning the first element, collateral estoppel "only serves to preclude relitigating issues that were actually litigated in the first place." *LSREF2 Baron, LLC v. Alexander SRP Apartments, LLC*, 17 F. Supp. 3d 1289, 1306 (N.D. Ga. 2014) (citation omitted). Additionally, "collateral estoppel does not require identity of the claim—so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim." *Fulton Cnty. Tax Comm'r v. Gen. Motors Corp.*, 507 S.E.2d 772, 778-79 (Ga. Ct. App. 1998) (quoting *Waldroup v. Greene Cnty. Hosp. Auth.*, 463 S.E.2d 5, 7 (Ga. 1995)). Thus, "collateral estoppel only precludes those issues that actually were litigated and decided in the previous action, or that necessarily had to be decided in order for the previous judgment to have been rendered." *Id.* at 779 (quoting *Waldroup*, 463 S.E.2d at 7).

The Defendants maintain that since Judge Land in the Dissenters' Rights Litigation found that Abeome "did not act arbitrarily, vexatiously, or in bad faith with respect to the rights provided by Georgia's Dissenters' Rights Statute," the "Trustee is barred from relitigating those same facts under labels of fraudulent transfer or fiduciary breach." [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 11]. The Trustee argues in response that the issues in "the Dissenters Rights Litigation are not the same as in the present litigation" and that Judge Land "did not rule on [the] Defendants' conduct with respect to the Lanier Transaction or the transfer of [the]

Debtor's assets to Lanier during the Dissenters' Rights Litigation." [Pl.'s Resp. to Mot. to Dismiss 6].

The Dissenters' Rights Litigation was a judicial appraisal action and at issue was Georgia's Dissenters' Rights statutory scheme, Georgia Code Annotated section 14-2-1301 et seq. [Defs.' Mem. Of Law in Supp. Of Mot. to Dismiss, Ex. A]. The catalyst for the Dissenters' Rights Litigation was two transactions Abeome recommended to its shareholders: "the sale of certain assets to Alloy Therapeutics, Inc. and a joint venture that would result in the combination of Abeome with a company called Bioptha through the formation of a new company, Lanier Biotherapeutics, Inc." [*Id.*, Ex. A. at 1, ¶ 1]. Judge Land ultimately held that Abeome substantially complied with the requirements of Georgia Code Annotated sections 14-2-1302 through 14-2-1327 and that "Abeome did not act arbitrarily, vexatiously, or in bad faith with respect to the rights provided by Georgia's Dissenters' Rights Statute." [*Id.*, Ex. A. at 8, ¶ 3]. As a result, Judge Land also held that the dissenters were not entitled "to an award of attorneys' fees, expert fees, or expenses" other than those described in the order. [*Id.*, Ex. A. at 8, ¶ 3].

Judge Land briefly commented on the evidence of the quality of the management of Abeome which came from the "most vocal dissenter." [*Id.*, Ex. A. at 13-14, ¶ 9]. But Judge Land also noted that "[t]his observation by the Court should not be interpreted to mean that the Court has made a determination that the management or Board of Abeome was (or is) incompetent." [*Id.*, Ex. A. at 14, ¶ 9 n.3]. Ultimately, Judge Land did not make any findings as to whether the directors of

Abeome breached their fiduciary duties to Abeome or whether the directors breached their duties to Abeome's creditors.

Georgia's Dissenters' Rights statutory scheme allows a record shareholder of a corporation to "dissent from . . . and obtain payment of the fair value of his or her shares in the event" a corporate action described in Georgia Code Annotated section 14-2-1302(a) occurs. If a demand is made by a dissenting shareholder under Georgia Code Annotated section 14-2-1327 and it remains unsettled, the corporation shall commence a proceeding and "petition the court to determine the fair value of the shares and accrued interest." GA. CODE ANN. § 14-2-1330(a). This proceeding "shall be a nonjury equitable valuation proceeding." GA. CODE ANN. § 14-2-1330(b).

A court can award attorney's fees and expert fees in an action under Georgia's Dissenters' Rights statutory scheme:

> (1) Against the corporation and in favor of any or all dissenters if the court finds the corporation did not substantially comply with the requirements of Code Sections 14-2-1320 through 14-2-1327; or
>
> (2) Against either the corporation or a dissenter, in favor of any other party, if the court finds that the party against whom the fees and expenses are assessed acted arbitrarily, vexatiously, or not in good faith with respect to the rights provided by this article.

GA. CODE ANN. § 14-2-1331(b)(1)-(2).

The Dissenters' Rights Litigation did not deal with identical issues that are present in this adversary proceeding. The value of dissenting shareholders' shares is simply not the same issue as whether there was a fraudulent transfer, whether there was a breach of fiduciary duties by the Defendants, or whether there was a conspiracy

to commit fraudulent transfers. The fact that the Dissenters' Rights Litigation arises from one of the transactions that forms the basis of this adversary proceeding does not change this. Judge Land went out of his way to state that he was not making a finding about whether the management of Abeome was competent. Judge Land also made no findings as to whether the transactions were fraudulent or whether there was a conspiracy to commit fraudulent transfers. Lastly, Judge Land's finding about Abeome not acting arbitrarily, vexatiously, or in bad faith was solely in the context of the rights provided by Georgia's Dissenters' Rights statutory scheme. Thus, collateral estoppel does not apply to this action based on the Dissenters' Rights Litigation as "collateral estoppel attaches only when an issue actually has been litigated and decided, or when an issue necessarily had to be decided in order for the previous judgment to have been rendered." *Waldroup*, 463 S.E.2d at 8 (footnote omitted).

**2. Georgia's appraisal-exclusivity doctrine does not apply.**

The Defendants argue that Georgia's appraisal-exclusivity doctrine bars Counts I, II, III, and V because "Georgia law channels challenges to pre-vote disclosure and informed decision-making into the appraisal process" and cite to *Grace Bros., Ltd. v. Farley Indus., Inc.*, 450 S.E.2d 814, 817 (Ga. 1994) for this proposition. [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 11]. The Defendants also maintain that Judge Land in the Dissenters' Rights Litigation found that Abeome complied with the "statutory requirements" which prevents the Trustee from repackaging "these issues as freestanding tort claims." [*Id.*]. The Trustee argues

that the appraisal-exclusivity doctrine does not apply to his claims and that even if it did apply, the exception for fraud and deceptive means would allow the Trustee's claims. [Pl.'s Resp. to Mot. to Dismiss 7].

Under Georgia law, the statutory appraisal remedy for dissenting shareholders, Georgia Code Annotated section 14-2-1302, is the exclusive remedy for a dissenting shareholder when the shareholder's complaint is about the price of his shares. *See Grace Bros.*, 450 S.E.2d at 817; *Croxton v. MSC Holding, Inc.*, 489 S.E.2d 77, 79 (Ga. Ct. App. 1997). There are a few exceptions to this exclusive remedy.

The first exception is set forth in Georgia Code Annotated section 14-2-1302(b) which provides that a shareholder entitled to dissent may challenge the corporate action creating his entitlement if "the corporate action fails to comply with procedural requirements of this chapter or the articles of incorporation or bylaws of the corporation or the vote required to obtain approval of the corporate action was obtained by fraudulent and deceptive means, regardless of whether the shareholder has exercised dissenter's rights." The Georgia Supreme Court has noted that the fraud exception under the statute is for actual fraud. *Grace Bros.*, 450 S.E.2d at 817 n.11; *see also Haskins v. Haskins*, 629 S.E.2d 504, 508 (Ga. Ct. App. 2006) (noting that the fraud exception is for actual fraud (citation omitted)).

Another exception is that individual shareholders can bring independent claims that are unique to the individual shareholder. *Croxton*, 489 S.E.2d at 79. In *Croxton*, the court held that shareholder Croxton was not limited to the statutory appraisal remedy of Georgia Code Annotated section 14-2-1302 because Croxton had

an employment contract with the corporation that set the minimum price of his shares which was an independent contract claim. *Id.* at 79.

The Defendants do not cite any case law in support of their position that the appraisal-exclusivity doctrine for *dissenting shareholders* applies to actions by a trustee on behalf of the estate of a bankrupt corporation against its directors. *See Grace Bros.*, 450 S.E.2d at 817 ("[O]ur statutory appraisal remedy is exclusive. It permits a dissenting shareholder to be paid the fair value of his shares and preempts any other remedy where the claim is essentially one regarding the price the shareholder is to receive for his shares." (citation omitted)). The Court has also been unable to locate any cases extending the appraisal-exclusivity doctrine outside of a dissenting shareholder action nor can the Court find any sufficient reasoning to extend it. Thus, the Court declines to extend this doctrine to the proceeding at hand.

**G. Georgia's business judgment rule does not apply to the Trustee's fiduciary duties and fraud claims because of the bad-faith exception.**

The Defendants argue that the business judgment rule bars the Trustee's fiduciary duties and fraud claims. [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 11-15]. The Defendants also argue that the Court can consider the business judgment rule even though it may be an affirmative defense because factual allegations in the Amended Complaint show the application of the business judgment rule. [*Id.* at 11-13]. The Trustee argues that the business judgment rule is not applicable since the Defendants acted in bad faith and engaged in fraudulent conduct. [Pl.'s Resp. to Mot. to Dismiss 7-8]. The Trustee also argues that the business

judgment rule is an affirmative defense which requires factual determinations that are not proper in the context of a motion to dismiss. [*Id.* at 8]. The Court will first discuss whether the business judgment rule can be considered in a motion to dismiss context.

The Trustee does not cite to any cases to support his position that the business judgment rule is an affirmative defense, and the Court has not found an Eleventh Circuit case which definitively states this either. But assuming it is, a "complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Heard v. Perkins*, 441 B.R. 701, 710 (N.D. Ala. 2010) (quoting *Singleton v. Dep't of Corr.*, 277 Fed. Appx. 921, 923 n.2 (11th Cir. 2008)); *see also Furr v. TD Bank, N.A. (In re Rollaguard Sec., LLC)*, 570 B.R. 859, 876 (Bankr. S.D. Fla. 2017) ("a court may consider an affirmative defense in resolving a motion to dismiss when the complaint 'affirmatively and clearly shows the conclusive applicability of the defense to bar the action.'" (quoting *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1277 (11th Cir. 2004)); *Miller v. Parker (In re Reading Broadcasting, Inc.)*, 390 B.R. 532, 555 (Bankr. E.D. Pa. 2008) (noting that the business judgment rule is an affirmative defense that "may be considered in the context of a Rule 12(b)(6) motion to dismiss when the applicability of the rule appears on the face of the complaint, and the plaintiff alleges no facts that would defeat the presumption that the rule applies" (citations omitted)). Thus, the Court will address whether the business judgment rule is applicable based on the Trustee's allegations.

The business judgment rule under the Georgia common law

> generally precludes claims against officers and directors for their business decisions that sound in ordinary negligence, except to the extent that those decisions are shown to have been made without deliberation, without the requisite diligence to ascertain and assess the facts and circumstances upon which the decisions are based, or in bad faith.

*Fed. Deposit Ins. Corp v. Loudermilk*, 761 S.E.2d 332, 338 (Ga. 2014).[10]

The business judgment rule is embodied in Georgia Code Annotated section 14-2-830(a), which states "[a] director shall perform his or her duties as a director in good faith and with the degree of care an ordinarily prudent person in a like position would exercise under similar circumstances." *See Lambeth v. Three Lakes Corp.*, 851 S.E.2d 181, 184 (Ga. Ct. App. 2020). This same standard applies to officers of a corporation. GA. CODE ANN. § 14-2-842(a) ("An officer shall perform his or her duties in good faith and with the degree of care which an ordinarily prudent person in a like position would use under similar circumstances.").

Under the Georgia business judgment rule "courts will not question the wisdom of a board's decisions, though they may evaluate the legitimacy of the decision-making process, starting with the presumption that the process was legitimate." *Vennwest Glob. Techs., Inc. v. McGovern*, Civil Action No. 1:20-CV-3386, 2021 U.S. Dist. LEXIS 262759, 2021 WL 9698912, at *6 (N.D. Ga. June 8, 2021)

---

[10] The Georgia Supreme Court also stated the common law business judgment rule in the following alternative manner:

> [T]he business judgment rule at common law forecloses claims against officers and directors that sound in ordinary negligence when the alleged negligence concerns only the wisdom of their judgment, but it does not absolutely foreclose such claims to the extent that a business decision did not involve "judgment" because it was made in a way that did not comport with the duty to exercise good faith and ordinary care.

*Fed. Deposit Ins. Corp v. Loudermilk*, 761 S.E.2d 332, 338 (Ga. 2014).

(citation omitted). This presumption is codified for directors and officers of a Georgia corporation:

> There shall be a presumption that the process a director [or an officer] followed in arriving at decisions was done in good faith and that such director [or officer] has exercised ordinary care; provided, however, that this presumption may be rebutted by evidence that such process constitutes gross negligence by being a gross deviation of the standard of care of a director [or an officer] in a like position under similar circumstances.

GA. CODE ANN. § 14-2-830(c) (addressing directors); GA. CODE ANN. § 14-2-842(c) (addressing officers); *see also McGovern*, 2021 WL 9698912, at *6 (noting that the presumption is codified for directors and officers).[11]

This presumption of good faith and ordinary care can be rebutted, and the plaintiff bears the burden of rebutting it. *McGovern*, 2021 WL 9698912 at *5 (quoting *Loudermilk*, 761 S.E.2d at 345). In the context of a motion to dismiss, "to show a breach of the duty of care, [the] [p]laintiff must allege facts which, if proven, would show that [the] [d]efendants grossly deviated from the course that other directors would have taken in similar circumstances." *Id.*

Bad faith is also an exception to the business judgment rule. *Id.* at *6 (citing GA. CODE ANN. § 14-2-830(c); GA. CODE ANN. § 14-2-842(c)). Thus, under Georgia law, "decisions not made in the best interests of the corporation would not comport with .

[11] "The requirement that plaintiffs show 'gross negligence' was a statutory update that the General Assembly passed in 2017 to the then-existing standard under Georgia law. Previously, under *Loudermilk*, a plaintiff might show the absence of ordinary care in the Board's process of deliberation through a showing of negligence." *Vennwest Glob. Techs., Inc. v. McGovern*, Civil Action No. 1:20-CV-3386, 2021 U.S. Dist. LEXIS 262759, 2021 WL 9698912, at *6 n.5 (N.D. Ga. June 8, 2021) (citation omitted).

. . [the director's or officer's] duty of good faith and duty of loyalty and so would not be shielded by the business judgment rule." *Id.*; GA. CODE ANN. § 14-2-830 cmt. ("The statement of the director's duties in subsection (a) . . . preserves the 'good faith' description of the duty of loyalty. But where former law required only a general 'good faith,' this formulation specifies the object of the good faith—the best interests of the corporation.").

Here, the Trustee has alleged facts that satisfy at a minimum the bad faith exception to the business judgment rule. The Trustee has alleged that despite receiving legal advice that proposed a structure to preserve tax benefits Abeome possessed, the Defendants chose to form Lanier and forgo those tax benefits. The Trustee has also alleged that the Defendants did not adequately inform the shareholders of Abeome of alternatives to the Lanier Transaction. Once Lanier was formed, the Overlapping Directors served on the boards for Abeome and Lanier and all of the Defendants had a financial interest in Lanier. The Defendants also voted to transfer funds from Abeome to Lanier, which was struggling financially. Viewing the facts in the light most favorable to the Trustee, the Defendants did not act in the best interests of Abeome but instead acted in the best interests of their individual interests and Lanier's interests. Thus, the business judgment rule does not bar the Trustee's breach of fiduciary duties and fraud claims.

**H. Shareholder ratification under Georgia Code Annotated section 14-2-860 is not satisfied by the Dissenters' Rights Litigation.**

The Defendants argue that shareholder ratification under Georgia Code Annotated section 14-2-860 bars the Trustee's Lanier Transaction claims. [Defs.' Am.

Mem. of Law in Supp. of Mot. to Dismiss 15]. The Defendants maintain that Judge Land in the Dissenters' Rights Litigation determined that Abeome substantially complied with Georgia Code Annotated sections 14-2-1302 through 14-2-1327 which includes a disclosure requirement. [*Id.*]. The Trustee argues in response that Georgia Code Annotated section 14-2-860 is not applicable because the Defendants "made misrepresentations and failed to convey material information about the Lanier Transaction to shareholders, including information regarding viable alternatives." [Pl.'s Resp. to Mot. to Dismiss 10-11]. The Trustee also argues that Georgia Code Annotated section 14-2-860 is not applicable because the Lanier Transaction was part of a fraudulent scheme to evade the creditors of the Debtor. [*Id.* at 11]. Lastly, the Trustee argues that Judge Land's findings in the Dissenters' Rights Litigation do not apply. [*Id.* at 11-12].

Georgia Code Annotated section 14-2-861(b) states in pertinent part that

> [a] director's conflicting interest transaction may not be enjoined, set aside, or give rise to an award of damages or other sanctions, in an action by a shareholder or by or in the right of the corporation, on the ground of an interest in the transaction of the director or any person with whom or which he has a personal, economic, or other association, if: . . .
>
> > (2) Shareholders' action respecting the transaction was at any time taken in compliance with Code Section 14-2-863.

Georgia Code Annotated section 14-2-863(a) states as follows:

> Shareholders' action respecting a transaction is effective for purposes of paragraph (2) of subsection (b) of Code Section 14-2-861 if a majority of the votes entitled to be cast by the holders of all qualified shares were cast in favor of

> the transaction after (1) notice to shareholders describing the director's conflicting interest transaction, (2) provision of the information referred to in subsection (d) of this Code section, and (3) required disclosure to the shareholders who voted on the transaction (to the extent the information was not known by them).

"Required disclosure" is defined as

> disclosure by the director who has a conflicting interest of (A) the existence and nature of his conflicting interest, and (B) all facts known to him respecting the subject matter of the transaction that an ordinarily prudent person would reasonably believe to be material to a judgment as to whether or not to proceed with the transaction.

GA. CODE ANN. § 14-2-860(4).

The Dissenters' Rights Litigation does not satisfy Georgia Code Annotated section 14-2-861(b)(2). The Defendants argue that Georgia's Dissenters' Rights statutory scheme includes a disclosure requirement and that satisfies Georgia Code Annotated section 14-2-860, but the Defendants do not explain how this is so or cite to any legal authorities to support their argument. As explained above, Georgia's Dissenters' Rights statutory scheme allows for dissenting shareholders to be paid for their shares upon a qualifying event. There are some disclosures required under Georgia's Dissenters' Rights statutory scheme. *See* GA. CODE ANN. §§ 14-2-1320, 1322(b), 1325(b). But none of those sections deal with conflicts of interest as required under Georgia Code Annotated section 14-2-860(4). Thus, shareholder ratification of the Lanier Transaction does not by itself bar the Trustee's Lanier Transaction claims.

### I. Abeome's exculpatory clause does not bar the Trustee's breach of fiduciary duties claims.

The Defendants argue that Georgia Code Annotated section 14-2-202(b)(4) and the exculpatory clause set forth in Article VIII of Abeome's Certificate of Restated Articles of Incorporation bar the Trustee's fiduciary duties claims (Counts III and IV). [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 19-22]. The Trustee argues in response that the exceptions set forth in Georgia Code Annotated section 14-2-202(b) are present and that the exculpatory clause does not apply to officers. [Pl.'s Resp. to Mot. to Dismiss 18-20].

The Defendants rely upon Abeome's Restated Articles of Incorporation and its exculpation clause, which they attached to their Motion to Dismiss the Trustee's original Complaint. Abeome's Restated Articles of Incorporation were filed with the Georgia Secretary of State in 2007. Article VIII states as follows:

> No director of the Corporation may have personal liability to the Corporation or to its shareholders for monetary damages for breach of fiduciary duty of care or other duty as a director, except that this Article VIII does not eliminate or limit the liability of a director: (i) for any appropriation, in violation of his duties, of any business opportunity of the Corporation; (ii) for acts or omissions that involve intentional misconduct or a knowing violation of law; (iii) for the types of liability set forth in Section 14-2-832 of the Code; or (iv) for any transaction from which the director received an improper personal benefit. Neither the amendment nor repeal of this Article VIII, nor the adoption of any provision of the Articles of Incorporation of the Corporation inconsistent with this Article VIII, will eliminate or reduce the effect of this Article VIII in respect of any act or failure to act, or any cause of action, suit or claim that, but for this Article VIII, would accrue or arise prior to any amendment, repeal or adoption of such an inconsistent provision. If the Code is

> subsequently amended to provide for further limitations on the personal liability of directors of corporations for breach of duty of care or other duty as a director, then the personal liability of the Corporation's directors will automatically be so further limited to the greatest extent permitted by the Code.

[Defs.' Mem. of Law in Supp. of Mot. to Dismiss, Decl. of Nicholas Bacon in Supp. of Defs.' Mot. to Dismiss, Ex. A, Adv. Proc. Dkt. No. 17].[12]

Georgia Code Annotated section 14-2-202(b)(4) was amended effective July 1, 2026, to include officers in an exculpation clause. 2026 Ga. HB 1185 Sec. 2. This amendment became effective on July 1, 2026, and applies to "all claims or proceedings initiated on or after such date." *Id.* Sec. 21. Prior to July 1, 2026, Georgia Code Annotated section 14-2-202 had not been amended since 1999. Ga. L. 1999, p. 405, § 4. The Court will apply the 2025 version of Georgia Code Annotated section 14-2-202 since it was in effect when this adversary proceeding was filed on October 24, 2025.

The 2025 version of Georgia Code Annotated section 14-2-202(b)(4) provides that the articles of incorporation may set forth

> (4) A provision eliminating or limiting the liability of a director to the corporation or its shareholders for monetary

[12] Even though Abeome's Restated Articles of Incorporation were only attached to the Defendants' Motion to Dismiss the Trustee's original Complaint, the Defendants continue to cite to and rely upon the Restated Articles of Incorporation in their Motion. A court can take judicial notice of public records in deciding a motion to dismiss, and doing so does not convert the motion to dismiss into a motion for summary judgment. *Am. Marine Tech., Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1081 (S.D. Fla. 2019) (citation omitted) (holding that the trial court properly took judicial notice of a Florida Department of State's website filing that was attached to a motion to dismiss), *aff'd*, No. 21-11336, 2021 U.S. App. LEXIS 30660, 2021 WL 4785888 (11th Cir. Oct. 14, 2021). The Trustee did not object to the Court considering Abeome's Restated Articles of Incorporation. Thus, the Court will take judicial notice of Abeome's Restated Articles of Incorporation. *See Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 & n.2 (11th Cir. 2020) (noting that the court could consider documents attached to a Rule 12(b)(6) motion to dismiss without converting it to a motion for summary judgment and that the court would consider the documents submitted by the parties on a motion to dismiss because neither party raised an objection).

> damages for any action taken, or any failure to take any action, as a director, except liability:
>
> > (A) For any appropriation, in violation of his or her duties, of any business opportunity of the corporation;
> >
> > (B) For acts or omissions which involve intentional misconduct or a knowing violation of law;
> >
> > (C) For the types of liability set forth in Code Section 14-2-832;[13] or
> >
> > (D) For any transaction from which the director received an improper personal benefit, provided that no such provision shall eliminate or limit the liability of a director for any act or omission occurring prior to the date when such provision becomes effective.

There is a dearth of cases interpreting Georgia's corporate exculpatory statutory provision. The Defendants cite to *Laddin v. Odom (In re Verso Technologies)*, Civil Action No. 1:09-CV-1293, 2010 WL 11598054 (N.D. Ga. June 30, 2010) to support their position that the exculpatory provision bars the Trustee's fiduciary duty claims. The corporation at issue in *Laddin* was incorporated in Minnesota, and the court applied Minnesota corporate law to the corporation's exculpation clause. *Id.* at *1, *15-17. The court also looked to Delaware court decisions on corporate law as persuasive precedent. *Id.* at *15.

The only case this Court has located that substantively analyzes Georgia's corporate statutory exculpation clause is *Kaye v. Dupree (In re Avado Brands, Inc.)*, 358 B.R. 868 (Bankr. N.D. Tex. 2006); *see also Conroy v. Amos*, 338 F. Supp. 3d 1309, 1320 (M.D. Ga. 2018) (analyzing a motion to dismiss a shareholder derivative action

---

[13] Georgia Code Annotated section 14-2-832 deals with a director's liability for unlawful distributions.

under Georgia Code Annotated section 14-2-744 and briefly discussing Georgia Code Annotated section 14-2-202(b)(4) and noting that "it appears the claims alleged by the [p]laintiffs would fall within the exculpatory clause" of the corporation's charter), *aff'd*, 785 Fed. Appx. 751 (11th Cir. 2019). In *Durpee*, the trustee alleged certain directors breached their fiduciary duties to the corporation by approving transactions that extended loans the corporation issued, released real estate collateral for loans owed to the corporation, and repurchased subordinated debt all while the corporation's financial condition was deteriorating and which did not benefit the corporation. 358 B.R. at 874-75. The court addressed a motion to dismiss, *inter alia*, the trustee's claims for breach of fiduciary duties. 358 B.R. at 872.

The court noted the absence of cases interpreting Georgia Code Annotated section 14-2-202(b)(4) and found instructive Delaware case law interpreting Delaware's corporate statutory exculpation clause. 358 B.R. at 879-80. The court also noted that Delaware's corporate statutory exculpation clause (Delaware Code Annotated title 8 section 102(b)(7)) is not identical to Georgia's corporate statutory exculpation clause, but both statutes limit exculpation of liability for intentional misconduct or a knowing violation of law. *Id.* at 879-80. In reviewing Delaware case law, the court noted that "where the facts of the complaint, taken as true, 'suggest that the defendant directors consciously and intentionally disregarded their responsibilities, adopting a "we don't care about the risks" attitude,' they sufficiently allege claims of intentional misconduct that fall outside of the exculpatory statutes." *Id.* at 880 (quoting *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 289 (Del. Ch.

2003)).[14] The court ultimately held that the trustee's complaint adequately alleged that the directors breached their fiduciary duties to the corporation through their "intentional, wrongful and/or reckless conduct" which took their conduct outside of the protection of the corporation's exculpation clause. *Id.*

Although not dealing with a corporation, *Astrachan* provides insight into interpreting the "improper personal benefit" prong of an exculpatory clause. In *Astrachan*, the Defendants asserted in response to a breach of fiduciary duty claim the defense of the exculpation clause in the operating agreement. 2021 WL 4469928, at *21. The court noted that the Georgia Code allows for operating agreements to limit the liability of members or managers of an LLC, but this limitation does not extend to "any transaction for which the person received a personal benefit in violation or breach of any provision of a written operating agreement." *Id.* (quoting GA. CODE ANN. § 14-11-305(4)). The court ultimately held that the exculpation clause did not require dismissal against the managers "given the allegations that they were on both sides of various transactions which can lead to a reasonable inference of improper self-dealing." *Id.* at *22.

At this early stage of the litigation, the Trustee has adequately alleged conduct by the Defendants that constitutes intentional misconduct and that the Defendants received an improper personal benefit through Abeome's transactions with Lanier.

[14] The court in *In re Walt Disney Co. Derivative Litigation* noted that Walt Disney's exculpation clause in its certificate of incorporation did not apply "[w]here a director consciously ignores his or her duties to the corporation, thereby causing economic injury to its stockholders, [as] the director's actions are either 'not in good faith' or 'involve intentional misconduct.'" 825 A.2d 275, 290 (Del. Ch. 2003) (footnote omitted).

Examples include the Trustee's allegations that the Defendants breached their fiduciary duties to Abeome by

> a. Intentionally withholding information necessary to make an informed decision on the Contribution Agreement from shareholders, including declining to disclose the full terms of the agreement, to explain the risks, and to explain viable alternatives such as liquidation;
> . . .
> j. Knowingly and intentionally allowing Lanier to dissipate the First Earnout Payment despite Lanier's contractual obligation to hold that payment for satisfaction of the Dissenters' Rights Claim.

[Am. Compl. ¶ 224]. The Trustee also alleged that the Defendants continued to approve transactions to shift funds to Lanier despite their knowledge of Abeome's mounting liabilities and even concealed from creditors the transfer of funds provided for under the amendment to the Contribution Agreement. Lastly, the Trustee alleged that some of the Defendants were Overlapping Directors and that all the Defendants held personal financial interests in Lanier.

The Defendants' arguments against improper personal benefit and intentional misconduct are not persuasive. The Defendants rely upon *Laddin* to support their proposition that "speculative" benefits do not constitute improper personal benefits, but the trustee in *Laddin* did assert improper personal benefits as an exception to the exculpatory clause and the court does not seem to have addressed that exception. 2010 WL 11598054, at *18, *20. In contrast, in this adversary proceeding some of the Defendants were Overlapping Directors and all of the Defendants had a personal financial interest in Lanier which was benefited at the time of the transfers of assets and cash from Abeome to Lanier. The Defendants' argument that the Trustee cannot

"plead intentional misconduct by group" misrepresents the Trustee's allegations as the Trustee specifically identifies which Defendants were present at Abeome board meetings and which Defendants voted for specific transactions. The Trustee also alleges that the Defendants were aware that Lanier was using the funds from the first Earnout Payment without Abeome's approval but did nothing to stop it. For these reasons, the Defendants' Motion is denied with respect to Count III.

The exculpation clause does not apply to Count IV because Count IV is a claim for breach of fiduciary duties against Defendant Alton as an officer. The Defendants argue that the actions the Trustee attributes to Defendant Alton of "preparing board presentations, communicating with shareholders, [and] recommending the transaction were board-directed conduct, not independent officer misconduct." [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 21-22]. The Defendants do not cite to any legal authorities to support this position and are in fact disputing the Trustee's factual allegations.

The Trustee alleges that Defendant Alton, in his capacity as the CEO of Abeome, prepared and delivered presentations and recommendations to the board of directors of Abeome. [Am. Compl. ¶ 235]. The Trustee also alleges that Defendant Alton breached his fiduciary duties as an officer of Abeome by preparing and presenting to the board of directors of Abeome "financial projections, analyses, and other information that were materially inaccurate and misleading" including understating anticipated operational and litigation costs." [*Id.* ¶ 240]. Taking the Trustee's factual allegations as true and viewing them in the light most favorable to

the Trustee, as the Court is required to do in a motion to dismiss context, Defendant Alton's acts described in Count IV were done in his capacity as the CEO of Abeome.

Additionally, the version of Georgia Code Annotated section 14-2-202(b)(4) applicable to this case does not allow for officers to be exculpated of liability. Further, the exculpation clause in Article VIII by its own terms only applies to directors of Abeome. Thus, the exculpation clause does not bar Count IV.

**J. The Defendants' arguments for dismissal of the Trustee's claim for civil conspiracy to commit fraudulent transfers are not sufficient.**

The Defendants' arguments for dismissal of Count V (conspiracy to commit fraudulent transfers) are (1) the underlying fraud claim fails, (2) the Trustee has failed to plead a meeting of the minds, and (3) the intracorporate doctrine bars the claim. [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 22]. To recover for a civil conspiracy claim under Georgia law, "a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." *Health Reform Team, Inc.*, 665 B.R. at 517 (quoting *Jenkins v. Wachovia Bank, Nat'l Ass'n*, 711 S.E.2d 80, 85 (Ga. Ct. App. 2011)). The Defendants' first argument fails since the underlying fraud claim (Count I) was not dismissed.

Regarding the Defendants' second argument, the Trustee argues that he has sufficiently alleged facts "that Defendants, either explicitly or implicitly, came to a meeting of the minds to wrongfully transfer Debtor's assets to Lanier to the detriment of Debtor and its creditors." [Pl.'s Resp. to Mot. to Dismiss 21]. "In alleging a conspiracy claim [under Georgia law], the plaintiff must show that the alleged

conspirators had either an implicit or explicit meeting of the minds to carry out the tortious conduct as co-conspirators." *Health Reform Team, Inc.*, 665 B.R. at 517 (citations omitted). Taking the Trustee's factual allegations as true and viewing them in the light most favorable to the Trustee, he has sufficiently alleged a meeting of the minds by the Defendants through their votes as directors on the board of Abeome approving the transfer of assets to Lanier despite their knowledge of Abeome's worsening financial condition.

Lastly, the Defendants' argument that the intracorporate conspiracy doctrine bars the conspiracy claim fails because this doctrine does not apply to Georgia state law claims. The intracorporate conspiracy doctrine provides that the "acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). Thus, "under the [intracorporate conspiracy] doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Id.*

The Georgia Court of Appeals has declined to extend the intracorporate conspiracy doctrine to a civil conspiracy claim based on Georgia state law. *White v. Shamrock Bldg. Sys., Inc.*, 669 S.E.2d 168, 175 (Ga. Ct. App. 2008), *overruled on other grounds*, *Pollard v. Great Dane, LLC*, 903 S.E.2d 338 (Ga. Ct. App. 2024).[15] The

[15] The court in *White v. Shamrock Building Systems, Inc.* noted that the intracorporate conspiracy doctrine "shields defendants in federal courts from civil liability for various federal civil conspiracy claims, such as antitrust, but not for criminal conspiracies." 669 S.E.2d 168, 175 (Ga. Ct. App. 2008), *overruled on other grounds*, *Pollard v. Great Dane, LLC*, 903 S.E.2d 338 (Ga. Ct. App. 2024). The

Defendants reliance on *Jones v. City of College Park* to support its argument is misplaced because *Jones* dealt with the intracorporate conspiracy doctrine in the context a federal civil rights claim under 42 U.S.C. § 1985,[16] not a Georgia state law claim. 540 F. Supp. 2d 1300, 1321 (N.D. Ga. 2007). Ultimately, the Defendants' request to dismiss the Trustee's conspiracy to commit fraudulent transfer claims on the basis of the intracorporate conspiracy doctrine is denied since the Defendants have not cited to any cases that apply the intracorporate conspiracy doctrine to Georgia state law claims and the Court's own research has not revealed any cases.

**K. The Defendants' arguments for dismissal of the Trustee's subsequent transferee claim against Defendant Alton are not sufficient.**

In Count VI the Trustee seeks to recover transfers made by Abeome to Lanier and then to Defendant Alton in the form of $7,000 monthly consultation fees paid to Defendant Alton. [Am. Compl. ¶ 263]. The Trustee's basis for this claim against Defendant Alton is that the Defendants caused fraudulent transfers from Abeome to Lanier, which in part were paid as monthly consultation fees to Defendant Alton. [*Id.* ¶¶ 256-57]. Thus, the Trustee claims that Defendant Alton is an immediate or mediate transferee of Lanier, the initial transferee of the fraudulent transfers, and is liable under § 550(a)(2). [*Id.* ¶ 265].

The Defendants argue that Count VI fails because the "underlying fraudulent transfer claim fails" and "because the Trustee has not pleaded facts tracing the

*White* court also noted that its own research had not revealed a Georgia appellate case applying the intracorporate doctrine. *Id.*

[16] 42 U.S.C. § 1985 is titled "Conspiracy to interfere with civil rights."

specific funds [Defendant] Alton received to the specific assets fraudulently transferred." [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 22-23]. The Defendants further argue that the Trustee's allegation that the monthly consultation fees "were paid from the assets fraudulently transferred from Debtor [Abeome] to Lanier" are conclusory and do not satisfy Rule 8 or Rule 9(b). [*Id.*]. The Defendants' first contention that the underlying fraudulent transfer claim failed can be disposed of since the Court did not dismiss the underlying fraudulent transfer claim.

"When a transfer is avoided under § 544 or 548 it is preserved for the benefit of the estate, 11 U.S.C. § 551, and the trustee may recover the property transferred or its value from the initial transferee or subsequent transferees, with some limitations." *Astrachan*, 2021 WL 4469928, at *27 (citing 11 U.S.C. § 550(a)). "[I]n order to state a Section 550(a)(2) claim, a plaintiff must allege sufficient facts to show, if proved, that the funds at issue originated with the debtor." *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007). A dollar-for-dollar accounting is not required at the pleading stage. *Id.*

As for defining immediate and mediate transferees under § 550(a), "[t]he immediate transferee is the one who receives a transfer from the initial transferee and all other recipients are mediate transferees." *Watts v. MTC Dev., LLC (In re Palisades at W. Paces Imaging Ctr., LLC)*, 501 B.R. 896, 916 (Bankr. N.D. Ga. 2013) (citation omitted). "The immediate or mediate transferee may be identified by tracing the funds from the initial transferee. Commingling funds does not prohibit tracing." *Id.* at 917 (citations omitted).

The Trustee has sufficiently pled facts tracing the funds Lanier paid to Defendant Alton. The Trustee has alleged that Defendant Alton entered into a consulting agreement with Lanier in October of 2021 whereby Lanier would pay Defendant Alton $7,000 per month in compensation. [Am. Compl. ¶ 74]. The Trustee has also specifically identified the dates and amounts of funds that were fraudulently transferred from Abeome to Lanier. Lastly, the Trustee has alleged that the $7,000 monthly compensation Lanier paid to Defendant Alton was paid from assets fraudulently transferred from Abeome to Lanier. [Am. Compl. ¶ 263]. Thus, the Defendants' request to dismiss Count VI is denied.

### L. The Defendants arguments for dismissal of Counts VII and VIII fail as they are predicated on certain counts of the Amended Complaint being dismissed.

The Defendants' argument for dismissal of Counts VII (attorneys' fees and expenses) and VIII (punitive damages) is that they are derivative of the other counts which the Defendants maintain should be dismissed. [Defs.' Am. Mem. of Law in Supp. of Mot. to Dismiss 23]. Since the Trustee's other counts were not dismissed, the Defendants' request that Counts VII and VIII be dismissed is denied.

## III. Conclusion

Accordingly, it is hereby

**ORDERED** that the Defendants' Motion is **DENIED**.

The Clerk is directed to serve a copy of this Order on counsel for the Defendants and counsel for the Trustee.

**[END OF ORDER]**